IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 12, 2014 Session

**MARTY JOE KELLEY v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-70207      Robert Corlew, III, Judge**

**No. M2013-02485-CCA-R3-PC - Filed November 18, 2014**

The Petitioner, Marty Joe Kelley, appeals the Rutherford County Circuit Court's denial of his petition for post-conviction relief from his convictions for five counts of rape of a child, three counts of aggravated sexual battery, nine counts of rape without consent, eighteen counts of especially aggravated sexual exploitation of a minor, and two counts of soliciting sexual exploitation of a minor and resulting effective sentence of thirty-six years to be served at 100%. On appeal, the Petitioner contends that he received the ineffective assistance of counsel at trial. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

G. Jeff Cherry, Lebanon, Tennessee, for the appellant, Marty Joe Kelley.

Robert E. Cooper, Jr., Attorney General & Reporter; Clark B. Thornton, Senior Counsel; William C. Whitesell, Jr., District Attorney General; and Laural Nutt Hemenway, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

We glean the following relevant facts from this court's opinion of the Petitioner's direct appeal of his convictions: In December 2006, the Rutherford County Grand Jury issued a 33-count indictment, charging the Petitioner with numerous sexual offenses involving the minor victim, who was his girlfriend's daughter and lived with him from the

age of five until December 2006 when she was sixteen. See State v. Marty Joe Kelley, No. M2010-02318-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 548, at **4-5, **6-7 (Nashville, July 12, 2012). In November 2008, the grand jury issued a fifty-eight-count superseding indictment, charging the Petitioner with six counts of rape of a child, three counts of aggravated sexual battery, nine counts of rape by force or coercion, nine counts of rape without consent as an alternative theory to rape by force or coercion, twenty-eight counts of especially aggravated sexual exploitation of a minor, two counts of soliciting sexual exploitation of a minor, and one count of sexual exploitation of a minor. Id. at *5.

At trial, the then eighteen-year-old victim testified that her mother and the Petitioner began a relationship when she was one year old and that the Petitioner began abusing her when she was five years old. Id. at *6. The victim testified about multiple incidents of sexual abuse that including his "'humping'" her while she was lying naked on his bed; forcing her to perform oral sex on him; performing oral sex on her; "'pushing on [her] vagina'" with his penis in attempts to have sexual intercourse with her; taking nude photographs of her; and forcing her to expose herself on a computer webcam. See id. at **7-16. In December 2006, the victim revealed the abuse to the police and a pediatric nurse practitioner from the Our Kids Center. See id. at **18-19. During an investigation of the case, a special agent with the Tennessee Bureau of Investigation (TBI) analyzed the victim's laptop computer and a desktop computer seized from the Petitioner's home. Id. at * 20. The agent found twenty-eight photographs of the victim on her laptop but "nothing of importance" on the desktop. Id.

The victim's half-brother, who was the Petitioner's son and in the fourth grade at the time of trial, testified that he saw the Petitioner use a webcam on the victim while she was wearing a bikini and that he saw the Petitioner "do this 'a lot.'" Id. He also saw the Petitioner "'get on top of the victim while wearing no clothing." Id. The victim's mother testified that she and the Petitioner had a twelve-year relationship and that they had two children together, both of whom were younger than the victim. Id. at *21. The victim's mother said that the victim first told her about the abuse when the victim was about fourteen years old. Id. The victim's mother confronted the Petitioner, but he denied the allegations. Id.

The Petitioner did not testify but presented witnesses to testify about his reputation and his relationship with his children and the victim. See id. at **21-23. He also presented an expert witness to testify about the hard drive on the victim's laptop computer. Id. at *23.

At the conclusion of the proof, the jury convicted the Petitioner of rape of a child, a Class A felony in counts 1 through 6; aggravated sexual battery, a Class B felony, in counts 7 through 9; rape by force or coercion, a Class B felony, in counts 10 through 18; especially

aggravated sexual exploitation of a minor, a Class B felony, in counts 31 through 34, 36 through 39, 41 through 44, 49, 50, 51, 53, 54, and 56; and soliciting sexual exploitation of a minor, a Class B felony, in counts 57 and 58. Id. at *24. The trial court dismissed counts 19 through 27 for rape without consent,[1] and the jury found the Petitioner not guilty of the remaining counts. After a sentencing hearing, the Petitioner received an effective sentence of thirty-nine years to be served at 100%. Id. at *25.

The Petitioner appealed his convictions to this court, raising numerous issues, including that the evidence was insufficient to support four of his child rape convictions; that the trial court improperly allowed the State to refer to the victim as "the victim" throughout the trial; that the trial court erred by repeatedly allowing the State to introduce prejudicial hearsay into evidence; and that the trial court improperly enhanced his sentences. See id. at *2. This court concluded that the State improperly elected facts for one of the Petitioner's child rape convictions, reversed that conviction, and remanded the case for a new trial as to that count. Id. at **62-62. This court also concluded that the Petitioner waived his claim regarding the State's references to "the victim" and most of his hearsay claims for failing to object. Id. at **26-27, 51-52. Finally, this court concluded that the trial court improperly enhanced the Petitioner's sentences for rape of a child pursuant to Blakely v. Washington, 542 U.S. 296 (2004), and modified his remaining sentences for that offense from twenty-three to twenty years, reducing his effective sentence to thirty-six years in confinement. Id. at **76-77.

The Petitioner did not file an application for permission to appeal to our supreme court. However, counsel[2] filed a timely petition for post-conviction relief, alleging, in relevant part, that the Petitioner received the ineffective assistance of counsel at trial because counsel (1) informed the jury of "a multitude of facts" during opening statement but failed

---

[1]During the jury charge, the trial court mistakenly instructed the jury that it could not convict the Petitioner of both rape by force or coercion in counts 10 through 18 and the alternative theory of rape without consent in the corresponding counts of 19 through 27. See State v. John E. Parnell, No. W1999-00562-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 78, at *18 (Jackson, Feb. 6, 2001) (stating that when an indictment charges "the same offense but by different means, the better practice is to submit all counts to the jury. In the event the jury returns a verdict of guilty on more than one count, the proper remedy is to merge the counts into a single conviction for the offense"). The jury announced its guilty verdicts in counts 10 through 18 but did not announce verdicts for counts 19 though 27, and the trial court marked those judgments of conviction as "dismissed."

[2]Post-conviction counsel also had represented the Petitioner in the direct appeal of his convictions. At the post-conviction evidentiary hearing, the post-conviction court advised the Petitioner of the conflict of interest, and the Petitioner stated that he wanted to waive his right to conflict-free counsel. The Petitioner also executed a written waiver of the conflict. See Frazier v. State, 303 S.W.3d 674, 684-85 (Tenn. 2010) (providing that a petitioner may knowingly and voluntarily waive the right to conflict-free counsel).

to establish those facts through cross-examination of the State's witnesses or by having the Petitioner testify; (2) failed to object to "five separate instances of hearsay," thereby waiving the issue on appeal; and (3) failed to object to the State's "continuous use of the term 'victim,'" thereby waiving the issue on appeal.

At the evidentiary hearing, trial counsel testified that he began practicing law in Florida in 1987 and prosecuted sex crimes in that state. In 1994, he began practicing law in Tennessee and, at the time of the hearing, had been practicing criminal defense in Tennessee for eighteen or nineteen years. The Petitioner's family hired counsel to represent the Petitioner and paid him $25,000. Counsel could not remember how many times he met with the Petitioner but said he met with the Petitioner at least three times: once in counsel's office, once at a McDonald's restaurant, and once during the trial. The Petitioner's mother or other family members were present "just about every time." Counsel said that the Petitioner was "kind of quiet about the whole thing" but that the Petitioner's family members were more vocal about how they thought "certain things should go." Regarding counsel's first meeting with the Petitioner, counsel said that he did not have "an independent memory of sitting down with Marty himself" but that he obtained background information about the case. He did not remember if he obtained the information from the Petitioner or the Petitioner's family. Counsel described the Petitioner's education as "minimal" and said he did not think the Petitioner finished high school. The Petitioner's mother was heavily involved in his case.

Trial counsel testified that the Petitioner did not have any prior felony convictions and that "that certainly was a factor I would have looked at to discuss with him, the possibility of [his] testifying in his defense." He said that he discussed "some things" about the case with the Petitioner but that he did not remember discussing "every single point" with him. Initially, the defense's theory was that the victim had fabricated the allegations because she wanted to live with her mother or was angry with the Petitioner for disciplining her about her use of her computer. Counsel said the theory changed "somewhat" over time as the defense received discovery and "things came up." Counsel said that, at first, the case appeared "very defensible." However, when counsel viewed home videos of the victim made by the Petitioner, the case seemed more difficult.

Counsel testified that at the beginning of trial, he planned to have the Petitioner testify. Sometime "well into the case, but well before trial," counsel met with the Petitioner, and they discussed whether the Petitioner was going to testify. Counsel said he told the Petitioner, "'Marty, to give you the best chance at acquittal, you need to testify.'" Counsel said the Petitioner was not "thrilled about it" and "felt uncomfortable with it." Nevertheless, the Petitioner agreed to testify.

Post-conviction counsel asked trial counsel if he prepared the Petitioner for his testimony. Trial counsel stated,

> I can say no. To the extent -- no, I didn't sit down and write him questions and say, "This is what I'm going to ask you. This is what the State's going to cross-examine you on." I would have -- in preparing him, I would have said simply, "Look, this is how it goes. I will ask you questions about what happened. You know, that's direct examination. Then the State will cross-examine you." And I would have at one point, probably, given him some examples of, "Well, if I were the prosecutor, this is the question that I would ask, and this is how, you know, I would phrase them."

However, counsel did not have that conversation with the Petitioner. He said that the night before the Petitioner was to testify, he met with the Petitioner at the Petitioner's home and that "we discussed things in depth about what's the status of the case, how it was going so far, and his testifying or not." Counsel planned to discuss the Petitioner's testimony with him "in detail" and what to expect on cross-examination, but the Petitioner told counsel, "'No, I'm not doing it.'" Counsel said he had "already committed to the jury" during his opening statement that the Petitioner was going to testify. Counsel also had made factual allegations during his opening statement that he had planned to prove with the Petitioner's testimony. He acknowledged that the Petitioner's not testifying left those allegations "un-testified to."

Trial counsel testified that before trial, he filed a motion requesting that the trial court prohibit the State from referring to the victim as "the victim" during the trial. The trial court granted the motion, but the State did not abide by it. Counsel said that he may have objected to the State's referring to "the victim" once or twice but that he then decided to "let it go." He acknowledged that he may not have raised any objection.

Trial counsel testified that after the jury convicted the Petitioner, the Petitioner was taken into custody, and counsel did not have any further discussions or meetings with him. Counsel said he continued to represent the Petitioner through sentencing but did not have the Petitioner testify at the sentencing hearing because the Petitioner could do nothing "to help the situation." Counsel acknowledged that the Petitioner could have made a statement of allocution at the hearing and that the State would have been unable to cross-examine the Petitioner about the statement.

On cross-examination, trial counsel acknowledged that he did not know what the State would have asked the Petitioner on cross-examination. When the Petitioner decided not to

testify, he had heard days of direct testimony and cross-examination of witnesses. Counsel said that the Petitioner was "visibly fearful" of testifying and that he thought the Petitioner was afraid of facing the type of questioning he had seen during the trial. Counsel tried to reassure the Petitioner that counsel would be present and object to inappropriate questions by the State. He also told the Petitioner that the Petitioner "simply needed to answer the [questions] and answer [them] truthfully." However, counsel could not change the Petitioner's mind. Counsel said the Petitioner's decision not to testify "pull[ed] the rug out from under the whole thing" and that he thought the Petitioner did not want to testify because the Petitioner was guilty and afraid to face the State's cross-examination. He acknowledged that he could have done more to prepare the Petitioner to testify, such as practicing cross-examination with him to make him more comfortable.

Trial counsel testified that although the Petitioner was not well educated, he was "certainly competent and smart enough" to understand and run his own business. Counsel noted that the Petitioner had managed his own funeral escort business and said that nothing caused him to think the Petitioner did not understand what was going on.

Trial counsel testified that use of the word "victim" was standard practice for prosecutors and defense attorneys. Nevertheless, counsel filed a motion to prohibit the State's use of "victim" in almost every case because he had concerns that "the jury doesn't realize it's a term of art for us and they attach more significance to that label than we do." Counsel acknowledged that people "slip up and say victim numerous times" in every case. He said that although the trial court had ruled favorably on his motion, he decided to "let it go" when the State referred to "the victim" rather than "jump up and start objecting." He said he also did not object because he did not expect the trial court to "bring the hammer down" on the prosecution for the error. To counsel's knowledge, the State's referring to "the victim" in front of the jury did not affect the outcome of the trial.

Trial counsel testified that the Petitioner's case was "the hardest-fought battle that I have ever been in." The trial lasted more than three weeks, and counsel did everything he could to help the Petitioner. He said he thought he provided effective assistance of counsel, noting that effective assistance did not mean perfect assistance.

The Petitioner testified that he completed the eighth grade and could read and write. After he was indicted, his mother found out about trial counsel from the internet. The Petitioner, his mother, and his sister met with counsel in counsel's office for twenty to thirty minutes to discuss the charges. They decided to hire counsel and met with him a second time to pay him $25,000. Later, they paid him an additional $8,000 to hire a computer expert and a private investigator.

The Petitioner testified that in addition to first the two meetings, he met with counsel only one other time. The meeting occurred before trial at the Petitioner's sister's house and lasted twenty to twenty-five minutes. During the meeting, counsel told the Petitioner to buy a blue suit and told him how to sit during the trial. He also talked with the Petitioner and the Petitioner's mother about the case. Counsel never talked with the Petitioner about discovery, the State's evidence, counsel's trial strategy, or the defense's theory. The Petitioner said he did not meet with counsel at a McDonald's or the Petitioner's home.

The Petitioner testified that counsel told him"[w]ay before trial" that he probably needed to testify. During counsel's opening statement, counsel told the jury about facts the defense was going to prove and referred to the Petitioner's upcoming testimony. However, counsel knew at the time of his opening statement that the Petitioner had not yet decided whether he was going to testify. About halfway through the trial, counsel told the Petitioner that it was "imperative" for him to testify. A few days later, though, counsel told him, "'I don't want you to testify. I decided against it.'" During a hearing, the trial court asked the Petitioner if he was going to testify, and the Petitioner told the trial court no. He said that counsel "told me I wasn't going to testify" and that "I just listened to what he said."

The Petitioner acknowledged that trial counsel filed a motion regarding the State's use of "victim" during the trial. Despite the motion, the State referred to "the victim" during its opening statement and numerous other times. The Petitioner said that counsel did not object and that the State's use of "victim" hurt the Petitioner's credibility with the jury. After the jury convicted the Petitioner, counsel did not visit him in jail. The Petitioner did not know what was going to happen at the sentencing hearing, and counsel did not tell him about an opportunity to make a statement of allocution.

On cross-examination, the Petitioner testified that "[i]n the beginning," he intended to testify. Therefore, counsel correctly told the jury during his opening statement that the Petitioner was going to testify. Later, counsel told the Petitioner that the Petitioner was not going to testify. The Petitioner acknowledged that during the Momon hearing, the trial court asked him if his decision not to testify was his independent decision and that he answered yes. He also acknowledged that no one forced him to make that decision and that he was not under the influence of drugs or alcohol during the Momon hearing. The Petitioner acknowledged that prior to this case, he had owned a successful business involving employees and more than one vehicle. However, his mother managed the business's receipts, payments, and records. He also acknowledged that he had actively participated in his post-conviction case and that he told post-conviction counsel about issues he wanted raised. The Petitioner said trial counsel claimed before trial that he was going to take care of everything and win the Petitioner's case.

At the conclusion of the Petitioner's testimony, the post-conviction court denied the petition for post-conviction relief.[3] On appeal, the Petitioner contends that he received the ineffective assistance of counsel pursuant to State v. Zimmerman, 823 S.W.2d 220 (Tenn. Crim. App. 1994), because trial counsel promised the jury during opening statement that certain evidence would be proven and that the Petitioner would testify but later failed to uphold those promises; that he received the ineffective assistance of counsel because trial counsel failed to object to numerous instances of hearsay by State witnesses; and that he received the ineffective assistance of counsel because trial counsel failed to object to the prosecutor's use of the term "victim" when the trial court had granted defense counsel's motion prohibiting the term.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was

_____

[3]We note that the post-conviction court filed a brief order denying the petition. Tennessee Code Annotated section 40-30-111(b) requires that a court enter a final order stating "the findings of fact and conclusions of law with regard to each ground." Nevertheless, the post-conviction court's order specifically incorporates by reference the oral findings of fact and conclusions of law that were transcribed and included in the record of the post-conviction hearing.

deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Turning to the Petitioner's claim that counsel was ineffective for making promises to the jury during opening statement that he did not keep, in Zimmerman, 823 S.W.2d at 221 (Tenn. Crim. App. 1991), the defendant was charged with second degree murder. During opening statement, counsel stated, in accordance with trial strategy, that the defendant and a psychologist would testify regarding the defense of "battered wife syndrome." However, at the conclusion of the State's proof, counsel recommended to the defendant that she not testify. Id. at 222. Additionally, counsel rested without presenting the testimony of an expert regarding battered wife syndrome or any additional proof. Id. This court concluded that counsel was ineffective, stating that "nothing changed during the course of the trial. . . . In other words, there appears to have been no basis for the sudden change in strategy." Id. at 226.

We have reviewed trial counsel's opening statement in this case. Trial counsel set out the defense's theory and made assertions regarding the evidence. However, unlike Zimmerman, counsel never promised the jury that the Petitioner was going to testify or that certain evidence would be presented. Moreover, counsel had several witnesses, including an expert in computer forensics examination, testify on the Petitioner's behalf. In any event, both the Petitioner and trial counsel stated at the evidentiary hearing that trial counsel's opening statement was based upon their mutual anticipation that the Petitioner was going to testify. Trial counsel testified that the Petitioner changed his mind the night before his scheduled testimony and refused to testify. In orally denying the petition for post-conviction relief, the post-conviction court found that the Petitioner made the decision not to testify and that counsel was not deficient. The court noted, though, that the decision was "somewhat unfortunate" in that the Petitioner "testified today as a perfect gentleman." We conclude that the Petitioner has failed to show that he received the ineffective assistance of counsel.

In a related argument, the Petitioner contends that counsel was ineffective for failing to prepare him to testify. Given that the Petitioner's trial involved fifty-eight counts of sexual crimes involving a minor and numerous State witnesses, we are perplexed that counsel would wait until the night before the Petitioner was scheduled to testify to begin preparing him for that testimony. Nevertheless, we agree with the post-conviction court that the Petitioner is not entitled to relief. At the evidentiary hearing, the Petitioner never testified that he wanted to testify at trial or that the only reason he decided not to do so was because counsel failed to prepare him for his testimony. Moreover, the Petitioner did not offer any proposed trial testimony at the hearing. Therefore, he has failed to show that his testimony would have been beneficial to his case, let alone changed the outcome. In other words, even if counsel rendered deficient performance, the Petitioner has failed to demonstrate that he was prejudiced by the deficiency.

Next, the Petitioner claims that he received the ineffective assistance of counsel because trial counsel failed to object to the State's repeated use of the term "victim" during the trial. Trial counsel testified at the evidentiary hearing that he decided to "let it go" rather than "jump up and start objecting," and the post-conviction court accredited his testimony and ruled that counsel's decision not to object was based on trial strategy. While we can appreciate an attorney's concern that frequent objections will distract and annoy a jury, we are puzzled as to why defense counsel would go to the trouble of filing a motion to prohibit the State from using the term "victim" and then fail to make a single objection when the State did not abide by the trial court's ruling. In any event, nothing indicates that the State's referring to "the victim" affected the outcome of the case. Therefore, the Petitioner has failed to show prejudice and is not entitled to relief on this issue.

Finally, the Petitioner contends that trial counsel was ineffective for failing to object when several State witnesses gave prejudicial hearsay testimony. In his appellate brief, the Petitioner cites to numerous examples of improper hearsay. However, post-conviction counsel never questioned trial counsel about his decision not to object to the testimony, and the post-conviction court did not address the issue in its denial of the petition. Therefore, this issue is waived. See Tenn. R. App. P. 36(a).

## III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-10-